HUNTER v. HANKINSON et al.*

[106 So. 514.   No. 24935.]

(Division A. Oct. 12, 1925.   On Suggestion of Error Jan. 4, 1926.)

1. EQUITY. *Bill alleging one portion of land to be claimed by one defendant, another by other defendant, and remainder by both, is not multifarious, if complainant's title against each of defendants, as to land claimed by both, is derived from same source.*

   A bill against two defendants to cancel their claim to land claimed by the complainant, in which one portion of the land is alleged to be claimed by one of the defendants, another by the other defendant, and the remainder by both, is not multifarious, if the title which the complainant asserts against each of the defendants, as to the land claimed by both of them, is derived from the same source.

ON SUGGESTION OF ERROR.

2. INJUNCTION. *Not to be granted against completed act, in absence of allegation of danger of repetition.*

   Injunction should not be granted where act complained of has been completed, there being no allegation of threat or danger of its being repeated.

3. INJUNCTION. *Solicitor's fee not allowed on dissolution as incident to final hearing.*

   No solicitor's fee is properly allowed defendant for dissolution of injunction, when dissolution is incident to and component part of the decree on final hearing of the cause; the statute not allowing fee for defending suit.

*Headnotes 1.   Equity, 21 C. J., Section 309;   2. Injunctions, 32 C. J., Section 24;   Mere apprehension of injury not ground for relief by injunction, see note in 68 L. R. A. 697;   14 R. C. L. 354;   3 R. C. L. Supp. 216;   4 R. C. L. Supp. 898;   5 R. C. L. Supp. 760;   3. Injunctions, 32 C. J., Section 821.

APPEAL from chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Suit by C. W. Hunter against W. S. Hankinson and another to correct a deed and cancel defendant's claims to land, for an injunction, and for accounting. From a decree sustaining a demurrer to the bill, complainant appeals. Affirmed in part, in part reversed and decree rendered, and in part reversed and remanded.

*Watson & Jayne,* for appellant.

The sole assignment of error is that the lower court erred in sustaining the demurrer, dismissing the bill, dissolving the injunction and decreeing damages. Appellant will discuss only such grounds of demurrer as to him seem requisite.

*That there was no equity on the face of the bill.* The bill of complaint was one to quiet title and the allegations thereof were sufficient to sustain the bill. Sections 306 and 307, Hemingway's Code, (sections 549 and 550, Code of 1906) ; *Cook* v. *Friley,* 61 Miss. 1. There was no complete and adequate remedy at law.

The law court has no jurisdiction to quiet titles. This jurisdiction has always belonged to the equity court. 4 Pom. Eq. Jur. (4 Ed.), par. 1398. There has been no departure from the doctrine of *Cook* v. *Friley,* either by statute or judicial decision, except the provisions of the Code requiring complainants to deraign title. Section 308, Hemingway's Code, (section 551, Code of 1906).

*That there was not a sufficient deraignment of title in appellant.* (a) The bill alleges title in appellant based on forty years of actual, continuous, adverse possession. This allegation of itself was sufficient deraignment of title: (1) As against the appellees under the Mississippi ten-years statute of limitations based on adverse possession. Section 2458, Hemingway's Code, (section 3094, Code of 1906) and annotations thereunder; *Bynum* v. *Stinson,* 81 Miss. 25, 32 So. 910; *Alexander* v. *Pendleton,* 8 Cranch 462, 3 L. Ed. 624; *Sharon* v. *Tucker,* 144 U. S. 538, 36 L. Ed. 532. (2) As against the United States under the doctrine of presumption of grant.

*Caruth* v. *Gillespie,* 109 Miss. 679, 6 So. 927; *U. S.* v. *Chavez,* 175 U. S. 209, 44 L. Ed. 255; *Nixon* v. *Carco,* 28 Miss. 414; *Grand Gulf Ry. Co.* v. *Bryan,* 8 S. C. M. 279; *Stevenson* v. *McReary,* 12 S. & M. 950, 2 C. J., page 288 *et seq.*

*That the bill of complaint was multifarious.* It alleges that each of the appellees was claiming to own certain portions of the land described in the bill of complaint; to-wit: that lying south and west of the old road and north of the Hankinson-Wade line; that is to say, that tract of land bounded by the two lines last mentioned and the Mississippi River. Under this allegation, there was one complainant suing two defendants who were each claiming the same tract of land. So long as this was true as to one portion of the land, the bill was not multifarious. This view of appellant is supported by the Mississippi cases. The rule laid down in *Roberts* v. *Burwell,* 78 So. 359, as to when a cause of action sued on as against several defendants is such as to make the bill multifarious, is aplicable here. See, also, *Robertson* v. *Monroe County,* 79 So. 187, 118 Miss. 541, and *Middleton* v. *Howell,* 90 So. 725.

If the bill was multifarious, the court should not have dismissed it, and committed error in so doing. Section 358, Hemingway's Code, (section 598, Code of 1906); *Reese* v. *Salmon,* 99 So. 382; *Roberts* v. *Burrell,* 78 So. 357. Inasmuch as the other grounds of demurrer do not go to the whole bill, they will not be considered. *Jones* v. *Jones,* 55 So. 361. A general demurrer must be sustained or overruled in its entirety. *Railroad Co.* v. *Railroad Co.,* 65 So. 508.

The fact that several distinct and unconnected matters of equity were alleged against appellee, M. E. Hamer, did not make the bill of complaint multifarious. This is allowed by the Mississippi Statute. Section 358, Hemingway's Code (section 598, Code of 1906); and annotations thereunder; *Dukate* v. *Adams,* 101 Miss. 433, 58 So. 475; *N. O. Ry. Co.* v. *N. O. G. N. Ry. Co.,* 107 Miss. 453, 65 So. 508.

*Nature of doctrine of multifariousness.* There is no absolute rule whereby the question of multifariousness is to be tested. It is usually based on the question of convenience. If the court can see its way clear to make a decree on a bill which joins that which might otherwise be an independent cause of action, it will not consider the bill multifarious. This is the substance of the holdings of the courts, some of which decisions are hereunder cited. *Collins* v. *Leary,* 74 N. J. Eq. 852, 71 Atl. 603; *Hudson* v. *Wood,* 105 N. E. 343, 263 Ill. 376; *Stevens* v. *Collins,* 249 Ill. 224, 94 N. E. 664; *Barney* v. *Lathan,* 103 U. S. 205.

*Rule on bills to quiet title.* So long as there is unity of title in the complainant with regard to the tract of land, the title to which is sought to be quited, all claimants thereto may be made parties defendant, although their claim may spring from different sources. *Hyman* v. *Wheeler,* 33 Fed. 829. The bill of complaint in this cause is not multifarious because it prayed for the quieting of title to all of the lands except those conveyed in the Hamer deed, and because it also prayed for the reformation of that deed because of the mistake of the scrivener made therein. *Wood* v. *Holliday* (Ala.), 88 So. 551.

*Dabney & Dabney* and *J. B. Dabney,* for appellees.

1. *The injunction.* Has complainant shown any right to an injunction against Mr. Hankinson? With what is this defendant charged in the bill? (1) With claiming all that part of the land lying north of the Hankinson line. He is not enjoined from making this claim. (2) With wrongfully cutting and removing timber and he is left to follow his own inclinations in that regard and cut all of the remaining timber, if he so disposes. (3) ". . . the defendant, W. S. Hankinson, and his agents and employees have *disregarded said fences* and gone through same for the purpose of cutting, hauling and removing said timber from said disputed lands as aforesaid."

This is the charge and the only charge forming the basis for the injunction. The writ of injunction is, we submit, a drastic remedy, and must be supported by a proper foundation. It is not stated in the bill *when* he disregarded these fences or *how* he disregarded them; whether he broke them down or merely went through gates that might be therein; whether he did what he did one or a thousand times. It is true that complainant states that he is without adequate remedy at law and that the injury is irreparable—but what injury? That of cutting and removing the timber from his own land, now claimed by complainant, not that of disregarding and going through said fences on complainant's land. If the complainant is so cock sure that he owns the land north of the Hankinson line, why did he not enjoin Mr. Hankinson from cutting the timber on same?

The alleged injury to complainant is entirely completed. There is not one word in the bill that alleges that Mr. Hankinson is threatening to continue his disregard of the fences and his going through same for the purpose of cutting and removing the timber. There must be at least a reasonable probability that the injury will be done if no injunction is granted, and not a mere fear of apprehension. 22 Cyc. 757-8.

Since equity will not attempt to do a vain thing, it will not by an injunction attempt to prevent an injury that has already been sustained or to prevent the doing of an act that has already been performed, especially where there is no showing that such action is being continued or repeated, or that defendant is threatening or intending to repeat the injury. 22 Cyc. 759-762.

II. *Multifariousness of bill.* If this bill is not multifarious, we can hardly conceive of one that is. It is even worse than that in *Columbus Ins. & Banking Co. et al v. Humphries et al.*, 64 Miss. 258, that met the severe condemnation of Judge CAMPBELL. It is held in that case that our statute permitting the uniting in one bill of several distinct and unconnected matters of equity against the same defendants does not permit the con-

necting in one bill distinct and unconnected equities against disconnected defendants. For other cases in which our own court has held bills to be multifarious, see *Nelms* v. *Brooks,* 105 Miss. 74, and *Guess* v. *Strahan,* 106 Miss. 1.

As stated by counsel in his brief, there is no definite and fixed rule governing the question of multifariousness, but each case stands to itself. We are willing to submit the instant case to this test.

Argued orally by *H. C. Watson,* for appellant, and *Moncure Dabney,* for appellees.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree sustaining a demurrer to a bill. The bill alleges ownership in the appellant of a large body of land lying in a bend of the Mississippi river, the title to a portion thereof being traced from one source, and to the other from another source, a portion of the land is alleged to be claimed by Mrs. Hamer, another portion by Hankinson, and the remainder of the land by both. The prayer of the bill is for the correction of a deed to part of the land executed to the complainant by Mrs. Hamer; for a cancellation of the claims to the land both of Mrs. Hamer and Hankinson; for an injunction against Hankinson restraining him from cutting timber from the land, which the bill alleges he has and will continue to cut therefrom; and for an accounting by Hankinson for the timber which he is alleged to have cut and removed from the land.

The grounds of the demurrer are that the bill presents no right in the complainant for the relief sought, and that the bill is multifarious. There is no merit in either of these contentions. The allegations of the bill clearly present a case for the relief prayed for, and the bill is not multifarious for the reason that the alleged claims of the defendants overlap as to a part of the land, and the title which the complainant asserts thereto against each of them is derived from the same source.

To hold the bill multifarious would force the appellant, in order to recover, to split his cause of action against one or both of the appellees, and this he is not required to do.

*Reversed and remanded.*

ON SUGGESTION OF ERROR.

McGOWEN, J.

After a careful review of the record in this case, we are firmly convinced that the conclusion reached by us as announced in the opinion heretofore rendered was correct; but, in order that we may amend that opinion to correct an inaccuracy in the statement of the case in the former opinion, and also pass upon the question of solicitor's fees for the dissolution of an injunction, we write this additional opinion, not desiring in any manner to change the rule of law formerly announced by us.

First. The following statement in the opinion is inaccurate: "For an injunction against Hankinson restraining him from cutting timber from the land, which the bill alleges he has and will continue to cut therefrom."

This statement in the former opinion refers to the prayer of the bill, and the exact prayer of the bill in this particular is as follows:

"The premises considered, complainant prays as follows: (a) That this court grant complainant a peremptory injunction enjoining the defendant W. S. Hankinson himself, and his agents and his employees, either, any or all of them, from cutting roadways or using roadways, from cutting or opening the fence, or enclosure of complainant, in, through or across the lands of complainant lying west and south of the alleged Hankinson line alleged and claimed by the defendant W. S. Hankinson."

The chancellor granted the *fiat* for the temporary injunction as prayed for.

It is clear to us that the object sought to be attained by the injunction was the cutting of timber; for, if the roadways and fence were closed against the defendant,

obviously they could not reach the timber. The refer-
ence in the original bill to this, we think, should be set
out here in order that it may be clearly seen just what
the court had in mind at the time the original opinion was
written:

"Complainant charges that the timber on the afore-
said lands, for the most part, is young and growing tim-
ber, and is not of the dimensions that would warrant the
same in being cut now, under the well known rules of
good forestry; that the cutting of said timber and re-
moving the same from complainant's lands by the said
defendant W. S. Hankinson under his alleged claim of
title to a portion of said lands will and does amount to
a sacrifice of said timber by the cutting of it while too
young and while of under dimensions; that no action
for damages for the cutting of said timber will be ade-
quate, as such cutting by said defendant Hankinson is
ruinous to said young timber, and is causing to com-
plainant irreparable damages for that reason."

We now quote from the ninth paragraph of the orig-
inal bill:

"Complainant further charges that, in order to pro-
tect his lands and timber aforesaid, he went to the ex-
pense, trouble, and caution to fence in said land and
timber from river to river, thus completely enclosing the
same with said fences, and that, notwithstanding that
fact, the defendant W. S. Hankinson and his agents and
his employees have disregarded said fences and gone
through same for the purpose of cutting, hauling, and re-
moving said timber from said disputed lands as afore-
said."

The amended bill and prayer thereto contain substan-
tially the same allegations, but both convey the idea
that the protection of the timber from devastation was
the idea dominant in these allegations. And so we cheer-
fully amend the opinion so that the reference to tim-
ber is eliminated, and reference here now is made to cut-
ting roadways or using roadways, or cutting or opening

the fence across the lands of the complainant, which does not in any way affect the conclusion reached by us in the former opinion after due deliberation and a fair consideration of the entire record.

Second. In the former opinion we made no reference to the dissolution of the injunction by the court below in the final decree sustaining the demurrer. We thought and still think, the chancellor was in error in sustaining the demurrer to the bill. We thought then, and still think, that the demurrer should have been overruled and the cause should have been reversed and remanded. But from the quotations above it is clear that the complainant did not allege that he had reason to believe that the use of the roadways or cutting of the fence would be continued, or that there was threatened danger of those acts sought to be enjoined being repeated. So that we have the case of an injunction being granted to prohibit a completed act. There is no allegation that there is a threat or actual danger of the act being repeated. We think this is fatal, and that the injunction was properly dissolved by the court below.

"*Injury Wholly Past.* Since equity will not attempt to do a vain thing it will not by injunction attempt to prevent an injury that has already been sustained or to prevent the doing of an act that has already been performed, especially where there is no showing that such action is being continued or repeated, or that defendant is threating or intending to repeat the injury. The party injured is of necessity remitted to his remedy at law to recover damages, not because it is adequate, but because no other remedy is possible." 22 Cyc. 759.

We amend the former opinion, and affirm that part of the decree in the court below which dissolved the injunction.

Third. It is vigorously insisted by counsel for appellee that he is entitled to have the judgment of the court below affirmed, wherein a fee to complainant of six hundred dollars was allowed for the dissolution of the injunction.

Under the repeated holdings of this court, the solicitor's fee, if allowed to a complainant as damages, is for services rendered in and about the specific act of dissolving the injunction, and the fee is not allowed when the case is tried on its merits and upon that trial it ultimates as a part of the final decree that the injunction is dissolved. It is obviously quite a different matter to appear in court as solicitor and procure the dissolution of an injunction and to appear in court on the final trial of the whole case when the case is at issue, tried and decided upon its merits, and incidentally on its final hearing the injunction is dissolved.

In this case there was no special hearing of the motion to dissolve the injunction, but said motion trailed the final hearing on the demurrer, and the order dissolving the injunction and allowing six hundred dollars solicitor's fee is a part and parcel of the final decree rendered by the court sustaining the demurrer and dismissing the bill.

In this case the chancellor erred in allowing the solicitor's fee for the dissolution of the injunction, for all the solicitor did in procuring the dissolution of injunction was necessarily a part of the defense of the suit, save the mere writing of the motion to dissolve; and the decree of the court below is reversed as to the solicitor's fee allowed to complainant.

We again announce the rule hitherto announced, that no solicitor's fees are properly allowed to the defendant for a dissolution of the injunction when the dissolution of the injunction is incident to and a component part of the decree upon a final hearing of the cause. And no fee under our statute is allowed to defendant to be paid by the complainant for defending the suit. *Jamison* v. *Dulaney,* 74 Miss. 890, 21 So. 972; *Curphy* v. *Terrell,* 89 Miss. 624, 42 So. 235; *Mims* v. *Swindle,* 124 Miss. 686, 87 So. 151; *Howell* v. *McLeod,* 127 Miss. 1, 89 So. 774; *Staple Cotton Co-op. Ass'n* v. *Borodofsky*

(Miss.), 104 So. 91; *Giglio* v. *Mary Saia,* handed down this day, and reported in (Miss.) 106 So. 513.

This cause will be affirmed only as to the dissolution of the injunction; and as to the award of a solicitor's fee the decree of the court below will be reversed and judgment here disallowing the solicitor's fee; and upon the demurrer to the bill the decree of the court below sustaining the demurrer is reversed and remanded, and the defendants are allowed thirty days in which to file their answers to the amended bill herein.

*Sustained in part, and overruled in part.*