**UNITED STATES of America**

v.

**BILOXI MUNICIPAL SCHOOL DIS-TRICT, et al.**

**UNITED STATES of America,**
**Plaintiff,**

v.

**GULFPORT MUNICIPAL SEPARATE SCHOOL DISTRICT, James S. Eaton, President, and Charles R. Storey, Earl C. Gay, A. L. Green and G. M. Owen, Members of the Board of Trustees of Gulfport Municipal Separate School District, and W. L. Rigby, Superintendent of Education of Gulfport Municipal Separate School District, Defendants.**

Civ. A. Nos. 2643, 2678.

United States District Court
S. D. Mississippi, S. D.

May 16, 1963.

Burke Marshall, Asst. Atty. Gen., St. John Barrett, Asst. Atty. Gen., Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for plaintiff (both cases).

Thomas J. Wiltz, Biloxi, Miss., Joe T. Patterson, Atty. Gen. of Mississippi, Jackson, Miss., Thomas H. Watkins, Jackson, Miss., for defendants, Biloxi Municipal School Dist. and others.

Charles R. Galloway, Owen T. Palmer, Jr., Gulfport, Miss., Joe T. Patterson, Atty. Gen. of Mississippi, Jackson, Miss., Thomas H. Watkins, Jackson, Miss., for defendants Gulfport Municipal Separate School Dist. and others.

MIZE, District Judge.

This is an action brought by the United States of America seeking to enjoin the Defendants from separating upon the basis of race or color any dependents of military personnel or civilian employees of the Plaintiff in the operation of the public schools of the Gulfport Municipal Separate School District in Harrison County, Mississippi. This relief is sought on the ground that the Defendants have and are violating their Assurances given under Chapter 19 of Title 20, United States Code, and have by their acts and conduct violated the Fourteenth Amendment to the Constitution of the United States.

The Plaintiff alleges as a basis for the relief sought the following facts:

1. The United States of America maintains Keesler Air Force Base, a

large military installation, and a Veterans Administration Hospital in Harrison County, Mississippi.

2. Approximately 2,000 children of military personnel and government employees attend the schools of the Gulfport Municipal Separate School District, including approximately 130 Negroes. The United States government does not have facilities for the education of these children.

3. The Gulfport Municipal Separate School District maintains and operates 17 public schools for the education of children within the district.

4. From 1951 to the present time the Commissioner of Education has approved and the Plaintiff has paid to the Gulfport Municipal Separate School District a total of $1,098,370.75 for the maintenance and operation of the schools in the Gulfport Municipal Separate School District under Chapter 13 of Title 20, United States Code.

5. The United States Commissioner of Education from 1950 to date has approved and the Plaintiff has paid or agreed to pay grants to the Gulfport Municipal Separate School District in the amount of $1,240,478.35 for the construction and improvement of the schools of the district under Chapter 19 of Title 20, United States Code.

6. A large proportion of these payments under both Chapter 13 and Chapter 19 of Title 20, United States Code, have been made by the Plaintiff since 1954.

7. The Gulfport Municipal Separate School District in connection with each of its applications for grants under Chapter 19 of Title 20, United States Code, has given written Assurances, as required by 20 U.S.C. § 636, that the school facilities of the district "will be available to the children for whose education contributions are provided on the same terms, in accordance with the laws of the state in which applicant is situated, as they are available to other children in applicant's school district."

8. It is the policy and practice of the Defendants in operating the public schools of the district to enroll white and Negro students in separate schools maintained and operated exclusively for students who are of the white or Negro race. As a result thereof all Negro school-age dependents of military personnel and civilian employees of the Plaintiff residing within the district attend schools operated exclusively for members of the Negro race.

The Complaint alleges injury to the Plaintiff consisting of impairment of the services and morale of its military and civilian personnel because of the possibility of separation of servicemen from their families if any of said servicemen send their children to schools outside the area of the military installation at which they are stationed in order to avoid subjecting the children to racial segregation in their education.

The Defendants have moved to dismiss the Complaint upon the ground that the United States of America has no standing as Plaintiff in this Court and does not have the requisite interest in the subject matter to maintain the action and upon the ground that the Complaint fails to state a claim upon which relief can be granted.

The Court will first consider the right or capacity of the United States to enforce any alleged rights under the Fourteenth Amendment to the Constitution and whether or not the United States of America has a cause of action for any alleged violation by the Defendants of the Fourteenth Amendment.

Only natural persons are entitled to the privileges and immunities of the Fourteenth Amendment and the United States is not a "person" nor "within the jurisdiction" of a State under the terms and provisions thereof. Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; United States v. Nebo Oil Company, D.C. La., 90 F.Supp. 73, affirmed C.A.5, 190 F.2d 1003; Scott v. Frazier, D.C.N.D., 258 F. 669; United States v. City of

Jackson, D.C.Miss., 206 F.Supp. 45. It is the individual who is entitled to the equal protection of the laws. McCabe v. Atchison, etc., Company, 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169.

Nor can the United States of America sue for the deprivation of civil rights of others. Only persons actually deprived of their individual civil rights can redress such rights. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; McCabe v. Atchison, etc., Company, supra; Brown v. Board of Trustees, C.A.5, 187 F.2d 20; Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385; Erie Railroad Co. v. Williams, 233 U.S. 685, 34 S.Ct. 761, 58 L.Ed. 1155; Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512.

Furthermore, the power to enforce the Fourteenth Amendment to the Constitution is specifically vested in Congress, Section 5 thereof providing: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." See United States v. Reese, 92 U.S. 214, 23 L.Ed. 563.

Congress has never granted to the Executive branch of the government any power or right to enforce the provisions of the Fourteenth Amendment. By 28 U.S.C. § 1343 Courts are given jurisdiction of suits to enforce civil rights brought "by any person".

The legislative history of the Civil Rights Acts clearly reflects that the failure to grant to the United States the power to bring Civil Rights actions was deliberate on the part of Congress. For example, an effort was made to have Congress amend 42 U.S.C. § 1985 to authorize suits to be brought in the name of the United States, but after heated debate the proposed amendment was defeated. Congressional Record 85th Congress, 1st Session, pages 10998–12565. There was a determined effort to amend the 1960 Civil Rights Act, P.L. 86–449, 74 Stat. 86, so as to authorize the United States to institute civil proceedings to protect rights under the Fourteenth Amendment. It was unsuccessful. Congressional Rec-

ord, 86th Congress, March 30th, April 8th, August 30th, 1960, pages 17513–22, et seq. The only Civil Rights Act in which Congress has authorized the institution of suits by the United States is 42 U.S.C. § 1971 dealing with deprivation of voting rights.

The Court therefore finds that the United States has no cause of action and no standing as a Plaintiff in this Court to enforce any rights under the Fourteenth Amendment to the Constitution.

The next question is whether or not the Complaint states a claim upon which relief can be granted on the ground that the Defendants have breached the terms of the Assurances given under 20 U.S.C.A. § 636.

The Court is of the opinion that the language of the statutory Assurances is unambiguous and that there is no need for the application of any rules of construction; that the Assurances merely provide that the Defendants will treat the children of military personnel or civilian employees of the United States government in exactly the same manner as other children in the district are treated, i. e. identical treatment for federal children and non-federal children. If identical treatment for the white and colored children of the military personnel or civilian employees of the government had been intended as a part of the assurance given, it would have been easy for the act requiring the assurance to have so provided. Its omission was not an oversight, but was intentional. All children attending schools in the Defendants' district are admitted on the same terms, i. e. all white children without exception are alleged to go to white schools and all colored children without exception are alleged to go to schools reserved for the Negro race.

The Acts under which the Assurances were given specifically provide that no agency or department or officer or employee of the United States shall exercise any direction, supervision or control over the personnel, curriculum or

program of instruction of any school in the district. 20 U.S.C. § 642(a), 20 U.S.C. § 241(f), 20 U.S.C. § 242(a).

■ This Court can only enforce contracts as written and will never make contracts for the parties and then enforce them. Bradley v. Howell, 161 Miss. 346, 133 So. 660, 134 So. 843; Goff v. Jacobs, 164 Miss. 817, 145 So. 728.

■ It is competent for parties to contract that their agreement will be governed by the laws of any designated state. Castleman v. Canal Bank & Trust Co., 171 Miss. 291, 156 So. 648; Albritton v. General Finance Corp., C.A.5, 204 F.2d 125; Armstrong v. Alliance Trust Co., C.A.5, 88 F.2d 449.

■ Plaintiff cannot urge that there is an implied agreement that school facilities would be available to federal children on any basis other than that applicable to other children in the district. There are no implied terms in any contract where the subject matter is unambiguously covered. McPherson v. Gullett Gin Company, 134 Miss. 771, 100 So. 16; Chesapeake, etc., Co. v. United States, 281 U.S. 385, 50 S.Ct. 343, 74 L.Ed. 921.

This construction of the Assurances is in conformity with the history of the legislation and the executive and administrative interpretation thereof.

The administration of both Chapters 13 and 19 of Title 20, United States Code, is delegated to the Commissioner of Education. Financial assistance has been granted by the Commissioner, and funds have been allocated for school construction by the Commissioner with full knowledge of how the schools in the district were operated, and said funds have been thus granted and allocated consistently since the 1954 decision in Brown v. Board of Education, 347 U.S. 483, 495, 74 S.Ct. 686, 98 L.Ed. 873.

In 1958 and again in 1962 an effort was made to amend these Acts so as to specifically provide that the Assurances must provide that the applying school districts would offer the same school facilities to all federal children regardless of race. In each instance the amendments were defeated.[1] During the hearings before the Subcommittee, on April 16th, 1962, on H.R. 10056 Mr. Burke Marshall, as Assistant Attorney General stated: " * * * The apparent congressional purpose was to provide federal funds for the education of children of our military forces and related civilians even though the educational facilities used were racially segregated."[2] Congress refused to enact H.R. 10056, which provided that the applicant should give "assurance that such agency will operate its public schools and admit students thereto on a racially nondiscriminatory basis * * *."

■ The Court therefore concludes that neither under the clear language of the statute nor the executive construction thereof nor the congressional intent is there any contractual liability here on the part of the Defendants.

■ There is no merit in the argument of Plaintiff that if the Assurances authorize separation of the races in the schools, they are unconstitutional. The Constitution does not compel or require mixing of the races. Briggs v. Elliott, D.C., 132 F.Supp. 776; Cohen v. Public Housing Administration, C.A.5, 257 F.2d 73; Holland v. Board of Public Instruction, C.A.5, 258 F.2d 730; Shuttlesworth v. Birmingham Board of Education, D.C.Ala., 162 F.Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145; Rippy v. Borders, C.A.5, 250 F.2d 690.

■ Nor if the Assurances were unconstitutional and void would it follow that Plaintiff here could enforce any contractual rights. An unconstitutional con-

1. Congressional Record, 84th Congress, 1st Session, pp. 2731, 7974–7977, 12009, 7118–20. See United States Code, Congressional and Administrative News, Vol. I, page 635, et seq. Congressional Record, 87th Congress, 2nd Session, p. 8860.

2. Hearings before Subcommittee on Integration in Federally Assisted Public Education Programs of the Committee on Education and Labor, House of Representatives, 87th Congress, 2nd Session, p. 601.

tract is void and there exists no contract to be enforced. The Courts will not under such circumstances make a new contract for the parties and then enforce the contract as made by the Court. Whelchel v. Stennett, 192 Miss. 241, 5 So.2d 418, and cases cited 91 C.J.S. United States, § 173.

Moreover, had the Defendants breached their Assurances the remedy and the relief that Plaintiff could obtain is specifically provided for in and limited by the statutes themselves. The entire administration of the Acts is delegated to the United States Commissioner of Education. 20 U.S.C. §§ 642(b), 242(b). 20 U.S.C. § 641 provides that where the Commissioner feels that any assurance given is not being carried out that there shall be a hearing after reasonable notice before the Commissioner and that the finding of the Commissioner is subject to judicial review on the record by the United States Court of Appeals. The prescribed administrative remedy is exclusive. School City of Gary v. Derthick, C.A.7, 273 F.2d 319; Cook v. Davis, C.A. 5, 178 F.2d 595; Shuttlesworth v. Birmingham Board of Education, D.C.Ala., 162 F.Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145; Green v. J. A. Jones Const. Co., C.A.5, 161 F.2d 359.

Furthermore, the statutes themselves provide the penalty for a violation of the Assurances or the relief available to the Commissioner. By 20 U.S.C. § 640 the Commissioner can make arrangements for constructing or providing proper school facilities himself. By 20 U.S.C. § 641 the Commissioner after the hearing can stop all payments to the agency as long as there is a failure to comply with the assurance, or if compliance is impossible, require a repayment by the agency of federal moneys diverted or improperly expended and make no further payments until this repayment is made. No right is given the Commissioner to require compliance with the Assurances by injunctive relief.

Where a statute creates a right of action and therein fixes the remedies available, the specified remedies are an integral part of the right and are substantive conditions and as such are exclusive. The statute does not make the assurances contractual promises that can be enforced by specific performance or injunction but merely assurances of a nature that a failure to comply therewith would authorize enforcement of the statutory remedies. On the exclusiveness of such remedies see Pollard v. Bailey, 20 Wall. 520, 87 U.S. 520, 22 L.Ed. 376; Sun Theatre Corporation v. R.K.O. Radio Pictures, C.A.7, 213 F.2d 284; Globe Newspaper Co. v. Walker, 210 U.S. 356, 28 S.Ct. 726, 52 L.Ed. 1096; Louisville, etc. R. Co. v. Dixon, 168 Miss. 14, 150 So. 811; Price v. Price, 202 Miss. 268, 32 So.2d 124; Coleman v. Lucas, 206 Miss. 274, 39 So.2d 879, 41 So.2d 54; Gulf & S. I. R. Co. v. Laurel Oil & Fert. Co., 172 Miss. 630, 158 So. 778, 159 So. 838, 160 So. 564.

The Court therefore also finds that Plaintiff has failed to state a claim upon which relief can be granted on the ground that the Defendants have failed or refused to perform the Assurances.

Defendants' Motion to Dismiss is sustained.